**Affirmed and Memorandum Opinion filed May 30, 2024**



In The

# Fourteenth Court of Appeals

### NO. 14-23-00130-CV

## DR. MARY TALLEY BOWDEN, Appellant

## V.

## THE METHODIST HOSPITAL, ET AL, Appellees

**On Appeal from the 151st District Court
Harris County, Texas
Trial Court Cause No. 2022-44525**

## MEMORANDUM OPINION

Appellant, Dr. Mary Talley Bowden (Dr. Bowden), sued appellees, The Methodist Hospital d/b/a Houston Methodist Hospital and Marc L. Boom (collectively "Houston Methodist"), for defamation and defamation by implication. Houston Methodist moved to dismiss Dr. Bowden's claims under the Texas Citizens Participation ACT (TCPA). *See* Tex. Civ. Prac. & Rem. Code §§ 27.001–.011. The trial court granted Houston Methodist's motion to dismiss and signed a final judgment. In two issues, Dr. Bowden asserts that the trial court erred in granting

Houston Methodist's motion to strike her unsworn declaration and motion to dismiss under the TCPA. *Id.* § 27.008(b). We affirm.

## *Background*

Dr. Bowden is a licensed ENT physician who practices in Houston, Texas. She is board-certified in both otolaryngology and sleep medicine. She is the founder of BreatheMD and specializes in sinus, sleep, and allergy disorders and treats both children and adults. She became a member of the Provisional Medical Staff at Houston Methodist in 2019.

When the COVID-19 pandemic began in March 2020, Dr. Bowden's practice shifted from treating patients with sinus, sleep, and allergy issues to treating COVID-19 patients. The Food and Drug Administration (FDA), the Centers for Disease Control and Prevention (CDC), and the Texas Department of State Health Services (TDSHS) encouraged the use of the COVID-19 vaccines to prevent the spread of the virus. Dr. Bowden treated her patients with Ivermectin, an off-label prescription. As time progressed, Dr. Bowden became an opponent of vaccine mandates and eventually the vaccines. According to Dr. Bowden, the vaccines posed significant risks, and "[s]he felt the government wasn't being candid about those risks." She began publicly sharing her opinions about the vaccine mandates and vaccines on Twitter:

> November 5, 2021: "I've had it. Going forward, I will not accept any patients who have been vaccinated. I will continue to see established patients how [sic] have had the vaccine, but all new patients have to be unvaccinated."
>
> November 8, 2021: "Given the current climate and the writing on the wall, I am shifting my practice focus to treating the unvaccinated."
>
> November 8, 2021: "Vaccine mandates are wrong."

During this time, Dr. Bowden published an updated vaccination policy on

BreatheMD's website. In this update addressed to the BreatheMD community, Dr. Bowden asserted that a urologist employed by Houston Methodist told a patient that Houston Methodist was "discussing denying care for unvaccinated people." Contrary to recommendations and guidance by the FDA, CDC, and TDSHS, Dr. Bowden promoted the use of Ivermectin on Twitter and republished a tweet claiming that "Ivermectin is effective for COVID-19."

In an attempt to counteract Dr. Bowden's opinions about the COVID-19 vaccine and treatments, Houston Methodist issued a statement on its Twitter account:

> Dr. Mary Bowden, who recently joined the medical staff at Houston Methodist Hospital, is using her social media accounts to express her personal and political opinions about the COVID-19 vaccine and treatments. These opinions, which are harmful to the community, do not reflect reliable medical evidence or the values of Houston Methodist, where we have treated more than 24,000 COVID-19 inpatients, and where all our employees and physicians are vaccinated to protect our patients. Despite what she has posted, Houston Methodist does not and will never deny care to a patient based on vaccination status. Dr. Bowden, who has never admitted a patient at Houston Methodist Hospital, is spreading dangerous misinformation which is not based in science. Furthermore, Dr. Bowden has told Houston that she is vaccinated, as required of all physicians who practice at Houston Methodist.

In the days following Houston Methodist's statement, a media blitz ensued. On November 12, Dr. Bowden appeared on "The Conservative Review" podcast. On November 15, she was interviewed by KTHR and discussed her response to Houston Methodist's Twitter statement. Two days later, Dr. Bowden appeared on the Larry Elder Show and discussed her suspension from Houston Methodist. That same day, she also held a press conference in front of her business. Finally, on November 20, Dr. Bowden announced on BreatheMD's website that she had been

3

suspended by Houston Methodist.[1]

After a series of additional media appearances discussing her opinions on the vaccine, treatments, and her suspension and resignation from Houston Methodist, Dr. Bowden filed suit against Houston Methodist, alleging defamation and defamation by implication and seeking $25 million for compensatory and punitive damages. Houston Methodist denied the allegations and moved to dismiss under the TCPA. In response, Dr. Bowden conceded that the TCPA applied but argued that she met her burden of establishing by clear and specific evidence a prima facie case for each essential element of her claim. She supported her position with her unsworn declaration, her curriculum vitae, and an unauthenticated document entitled "Ivermectin for COVID-19: real-time meta analysis of 95 studies." Houston Methodist moved to strike the declaration due to statutory and evidentiary defects. Houston Methodist also moved to strike the Ivermectin analysis due to evidentiary defects. The trial court signed an order striking Dr. Bowden's declaration in its entirety because it was defective. In its order, the trial court noted that she did not file a response. After an oral hearing, the trial court granted Houston Methodist's motion to dismiss. This appeal followed.

## *Discussion*

In two issues on appeal, Dr. Bowden argues the trial court erred by (1) striking her "affidavit" because the facts presented were relevant, not hearsay, and supported by first-hand knowledge; and (2) granting Houston Methodist's motion to dismiss because she established a prima facie case for each essential element of her claims.[2]

---

[1] Reviewing the record, it is unclear when Houston Methodist suspended Dr. Bowden. Houston Methodist nonetheless acknowledges that Dr. Bowden's privileges were suspended, and the hospital planned to investigate her vaccination status. Before the commencement of the investigation, Dr. Bowden resigned.

[2] We note that Dr. Bowden refers to her unsworn declaration as an "affidavit." *See* Tex.

We will begin our analysis by addressing the trial court's evidentiary ruling and then turn to the TCPA's burden-shifting mechanism to determine if dismissal was warranted.

### *Evidentiary Ruling*

We review a trial court's evidentiary ruling, such as its ruling on a motion to strike an affidavit or declaration, for an abuse of discretion. *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 727 (Tex. 2016). A trial court abuses its discretion when it acts without regard for guiding rules or principles. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012). Reversal is not appropriate unless the error probably caused the rendition of an improper judgment or probably prevented the party from properly presenting the case to this court. Tex. R. App. P. 44.1(a); *Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 225 (Tex. 2005).

The unique language of the TCPA directs courts to decide the statute's applicability based on a holistic review of the pleadings. *See Adams v. Starside Custom Builders*, LLC, 547 S.W.3d 890, 897 (Tex. 2018). Section 27.006(a) provides that when considering a TCPA motion to dismiss, the court "shall consider . . . supporting and opposing affidavits stating the facts on which the liability or defense is based." *See* Tex. Civ. Prac. & Rem. Code § 27.006(a).

Houston Methodist filed a motion to strike Dr. Bowden's unsworn declaration for failure to comply with Civil Practice and Remedies Code section 132.001(d), specifically the unsworn declaration lacked the "statutorily required jurat for a

---

Civ. Prac. & Rem. Code § 132.001(c) (providing the requirements for an unsworn declaration). However, "[a]n affidavit is a 'statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified by the officer under his seal of office.'" *Goggin v. Grimes*, 969 S.W.2d 135, 138 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (quoting *Perkins v. Crittenden*, 462 S.W.2d 565, 567–68 (Tex. 1970)). There is no evidence in the record that Dr. Bowden's declaration was sworn to before an officer authorized to administer oaths or officially certified by the officer under his seal of office. *Id.*

declaration in lieu of an affidavit." *See Hays St. Bridge Restor. Grp. v. City of San Antonio*, 570 S.W.3d 697, 702 (Tex. 2019) (unsworn declaration lacking statutorily required jurat provided no support for motion). According to the trial court's order, Dr. Bowden did not respond to the motion to strike. The record does not reflect that Dr. Bowden objected to the trial court's order striking the declaration or in any way sought to submit a declaration with a compliant jurat. Dr. Bowden, therefore, failed to preserve error challenging the trial court's striking of the declaration.

In general, to preserve a complaint for appellate review, the record must show that the complaining party made a timely and specific objection to make the trial court aware of the grounds for objection (unless the ground is implied by the context of the objection). *See* Tex. R. App. P. 33.1(a).

Although Dr. Bowden asserts that the trial court erred by striking her declaration, the record before this court does not reflect that Dr. Bowden made a timely request, objection, or motion to inform the trial court of her complaint. *See* Tex. R. App. P. 33.1. Therefore, we conclude Dr. Bowden did not preserve a complaint for appellate review as to this issue.

Accordingly, we overrule Dr. Bowden's first issue.

### Texas Citizens Participation Act

The purpose of the TCPA is to "encourage and safeguard" the constitutional rights to speech, petition, and association while also protecting the right to file and pursue "meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code § 27.002. The TCPA contemplates an expedited dismissal procedure when a "legal action" is "based on or is in response to a party's exercise of the right of free speech, right to petition, or right of association." *Id.* § 27.003(a).

To accomplish this objective, the TCPA provides for a multi-step process for

the dismissal of a legal action to which it applies. *Montelongo v. Abrea*, 622 S.W.3d 290, 295–96 (Tex. 2021). First, the movant must demonstrate that the legal action is "based on or is in response to" the movant's exercise of the right of free speech, petition, or association. *Id.*; Tex. Civ. Prac. & Rem. Code §§ 27.003(a), .005(b). If the movant meets this burden, the claimant may nevertheless avoid dismissal by establishing by clear and specific evidence a prima facie case for each essential element of the claims in question. *Montelongo*, 622 S.W.3d at 296; Tex. Civ. Prac. & Rem. Code § 27.005(c). Under this standard, the claimant must provide enough detail to show the factual basis for their claim. *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding). Even if this showing is made, the movant can still win dismissal if it establishes "an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." Tex. Civ. Prac. & Rem. Code § 27.005(d).

The trial court's application of this process is subject to a de novo review. *Adams*, 547 S.W.3d at 894. Under this standard, we "make an independent determination and apply the same standard used by the trial court in the first instance." *Cox Media Grp., LLC v. Joselevitz*, 524 S.W.3d 850, 859 (Tex. App.—Houston [14th Dist.] 2017, no pet.). We consider the relevant pleadings, evidence a court could consider under Texas Rule of Civil Procedure 166a, and any supporting or opposing affidavits "stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code § 27.006(a). We review these materials in the light most favorable to the nonmovant. *See Enter. Crude GP LLC v. Sealy Partners*, LLC, 614 S.W.3d 283, 293–94 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

**Did Houston Methodist Establish TCPA Applicability?** To obtain dismissal under the TCPA, Houston Methodist had the initial burden to demonstrate that the TCPA applied to Dr. Bowden's claims against it. *See* Tex. Civ. Prac. & Rem.

Code § 27.005(b). As mentioned, Dr. Bowden concedes that her claims are governed by the TCPA. Since Houston Methodist's initial burden has been met, the burden shifts to Dr. Bowden to establish, by clear and specific evidence, a prima facie case for each essential element of her defamation claim. *Id.* § 27.005(c).

**Did Dr. Bowden Establish a Prima Facie Case?** Dr. Bowden asserts that only the second step of the TCPA burden-shifting mechanism is in dispute. She argues that she established, by clear and specific evidence, a prima facie case for each essential element of her defamation case.[3] Thus, we must decide whether the record contains a minimum quantum of clear and specific evidence that Houston Methodist defamed Dr. Bowden. The TCPA does not define "clear and specific evidence." *See* Tex. Civ. Prac. & Rem. Code §§ 27.001–.011. The supreme court, however, has held that, for purposes of the TCPA, "clear" means "'unambiguous,' 'sure,' or 'free from doubt,'" and "specific" means "'explicit' or 'relating to a particular named thing.'" *S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018) (quoting *Lipsky*, 460 S.W.3d at 590).

"Defamation is generally defined as the invasion of a person's interest in her reputation and good name." *Hancock v. Variyam*, 400 S.W.3d 59, 63 (Tex. 2013). Defamatory statements are those that tend to "injure a living person's reputation and

---

[3] In this case, Dr. Bowden sued Houston Methodist for defamation by implication. Defamation by implication is not the same thing as textual defamation; rather, it is a subset of textual defamation. *Dall. Morning News v. Tatum*, 554 S.W.3d 614, 627 (Tex. 2018). Dr. Bowden has not provided any argument regarding her defamation by implication claim. Even though we are required to interpret appellate briefs reasonably and liberally, parties asserting error on appeal still must put forth some specific argument and analysis citing the record and authorities in support of their argument. *See* Tex. R. App. P. 38.1(i) (requiring appellants to present a brief that includes a clear and concise argument for each issue raised, with appropriate citations to legal authority and the record); *see also Cunningham v. Waymire*, 612 S.W.3d 47, 64 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Accordingly, we decline to address Dr. Bowden's defamation by implication claim because she failed to adequately brief any argument in support of this issue and so has waived the complaint. *Id.*; *see also San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

thereby expose the person to public hatred, contempt or ridicule, or financial injury" as well as those statements that "impeach any person's honesty, integrity, virtue, or reputation." Tex. Civ. Prac. & Rem. Code § 73.001. Defamation requires proof (1) of the publication of a false statement of fact to a third party, (2) that defamed the plaintiff, (3) with the requisite degree of fault, and (4) that proximately caused damages. *Mem'l Hermann Health Sys. v. Gomez*, 649 S.W.3d 415, 423 (Tex. 2022).

"In a defamation case that implicates the TCPA, pleadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss." *Lipsky*, 460 S.W.3d at 591. The TCPA does not require that Dr. Bowden produce evidence that each and every alleged statement is defamatory to meet her burden; rather, Dr. Bowden must establish "a prima facie case for each essential element" of her defamation claims against Houston Methodist. Tex. Civ. Prac. & Rem. Code § 27.005(c).

As mentioned, the "threshold requirement" for defamation is "the publication of a false statement of fact to a third party." *Dall. Morning News v. Tatum*, 554 S.W.3d 614, 623 (Tex. 2018). "If a statement is not verifiable as false, it is not defamatory." *Id.* at 624. To determine if a statement is false for defamation purposes, courts utilize the substantial truth doctrine. *Neely v. Wilson*, 418 S.W.3d 52, 63 (Tex. 2013). "The common law of libel takes but one approach to the question of falsity, regardless of the form of the communication." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991). "It overlooks minor inaccuracies and concentrates upon substantial truth." *Id.* "A statement need not be perfectly true; as long as it is substantially true, it is not false." *KBMT Operating Co., LLC v. Toledo*, 492 S.W.3d 710, 714 (Tex. 2016). Furthermore, courts determine a statement's meaning "by construing the publication [ ] as a whole in light of the surrounding circumstances

9

based upon how a person of ordinary intelligence would perceive it." *Id.* at 721 (internal quotations omitted). To determine if Dr. Bowden met her burden to establish, by clear and specific evidence, a prima facie case that Houston Methodist's statements were false, we examine Dr. Bowden's pleadings and the relevant evidence. *See* Tex. Civ. Prac. & Rem. Code § 27.006(a).

Here, Dr. Bowden's pleadings state that her defamation claim is based on false statements that were published and republished by Houston Methodist. These statements can be classified into two broad categories: (1) statements that Dr. Bowden's opinions about the virus and the vaccines are harmful to the community, and (2) statements that Dr. Bowden spread misinformation that does not reflect reliable medical evidence. Relying on her own declaration, Dr. Bowden asserts that Houston Methodist's statements are false because "use of [I]vermectin to treat COVID patients is supported by medical evidence and is an accepted and safe treatment protocol." Apart from Dr. Bowden's declaration, which was struck by the trial court, the record contains no other evidence that Houston Methodist's statements concerning Dr. Bowden's opinions about the virus and the vaccine mandates were untrue. Based on the evidence in the record, the statements published by Houston Methodist align with the then-existing scientific consensus and government guidance about the vaccine and effective treatments. We therefore must conclude that Dr. Bowden has failed to establish by clear and specific evidence the first element of her defamation claim.

Because Dr. Bowden failed to satisfy her burden to establish, by clear and specific evidence, a prima facie case as to at least one element of her defamation claim, the trial court did not err in dismissing this claim under the TCPA. *See Montelongo*, 622 S.W.3d at 296; Tex. Civ. Prac. & Rem. Code § 27.005(c). Accordingly, we need not consider whether Dr. Bowden established the remaining

elements of her defamation claim and overrule her second issue.

## *Conclusion*

We conclude that Houston Methodist met its initial burden to show that Dr. Bowden's claims against it fall within the TCPA. The burden then shifted to Dr. Bowden to establish by clear and specific evidence a prima facie case for each essential element of her claims. Dr. Bowden failed to establish a prima facie case for her defamation claims. We therefore affirm the final judgment.

/s/ Frances Bourliot
Justice

Panel consists of Justices Bourliot, Zimmerer, and Spain.

11